921 F.2d 278
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jerry MONTGOMERY, Plaintiff/Appellant,
v.
DEPARTMENT OF CORRECTIONS, Dr. John Does of the Wishard
Memorial Hospital's Ophthalmology Department, Dr. Doster,
Dr. Cook of the I.S.P., Inmate Care and Treatment Contract,
Dr. Mark Henry, Defendants/Appellees.
 No. 90-1755.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 13, 1990.*
Decided Dec. 19, 1990.
Rehearing Denied Feb. 28, 1991.
 
 Before BAUER, Chief Judge, FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 Appellant Jerry Montgomery filed suit under section 1983, alleging that the defendants were deliberately indifferent to his serious medical needs in their treatment of his eye. The district court held that Montgomery's claim at most amounted to negligence and therefore was not cognizable under section 1983. We agree with the district court's conclusion and affirm the grant of summary judgment.
 
 I.
 
 2
 Montgomery was injured sometime in 1984 when shards of metal lodged in the glob e of his right eye. He was initially treated at an emergency room where his e y e wound was sutured and he was given a patch to protect the eye. The emergen cy room report stated that the injury deprived him of full sight in his right e ye, although he retained sensitivity to light. Medical records reveal that he la ter received treatment for his injury at two different hospitals. During ey e § urgery in 1985, doctors apparently removed one of the metal fragments; it is unclear whether the doctors realized that a second metal fragment was present in the eye globe.
 
 
 3
 In 1988, Montgomery requested medical treatment for pain in his right eye. At this time, Montgomery had been without sight in this eye for two years. The Indiana State Prison officials took Montgomery to Wishard Hospital in Indianapolis where he was examined by defendant Dr. Mark Henry, an ophthalmologist. Dr. Henry concluded that the eye pain Montgomery suffered was the result of shrinking and degeneration of the right eye itself, rather than the presence of the metal object in the eye globe. Dr. Henry suggested two treatment options: (1) Have the eye removed completely; or (2) Use eye drops for temporary treatment of the pain. Montgomery wanted the metal object removed instead of the entire eye, apparently believing that his vision would return once the object was removed. Montgomery also believed that the metal fragment was causing fungal infections in his body, and that these infections would disappear once the metal was removed from his eye.
 
 
 4
 Dr. Henry refused to perform surgery to remove the object because of the possibility that surgery on the right eye would lead to a potentially blinding inflammatory condition in the left eye called sympathetic ophthalmia. Complete removal of the right eye, however, would avoid the potential of infecting the left eye. Montgomery chose the second treatment option and was returned to prison with a prescription for Atropine eye drops.
 
 
 5
 Montgomery filed suit in federal district court, but his first complaint was dismissed with leave to amend for failing to meet the "deliberate indifference" standard under Estelle v. Gamble, 429 U.S. 97 (1976). Montgomery then filed an amended complaint seeking $150,000,000 in damages. He claimed that the defendants deliberately violated the eighth amendment when they refused to perform the requested surgery or refer him to a doctor who would.
 
 
 6
 The defendants filed motions for summary judgment and attached affidavits from Dr. Henry and Dr. Yung, Chief Physician of the Ophthalmology Department at Wishard Hospital. Dr. Yung stated that Dr. Henry's treatment had been appropriate under the circumstances of the case. Although notified of the necessity to file counter-affidavits, Montgomery failed to do so.[1] The district court entered summary judgment for the defendants, holding that Montgomery's disagreement with his medical treatment failed to constitute a violation of the eighth amendment.
 
 II.
 
 7
 Montgomery disputes the medical advice Dr. Henry gave him with a lengthy list of alleged errors. For example, Montgomery claimed in his complaint that Dr. Henry erred when he claimed that sympathetic ophthalmia could result from surgery to remove the metal fragment from his right eye. Montgomery claims that sympathetic ophthalmia is always preceded by an eye condition known as granulomatous uveitis. Since Montgomery claims that he does not and never has had this condition, Dr. Henry's treatment must have been incorrect. Montgomery also claimed in his complaint that Dr. Henry erred when he told Montgomery that the metal fragment could not be the cause of fungus infections that Montgomery was experiencing. Montgomery further alleges that Dr. Henry failed to inform him of potentially harmful side effects from the Atropine eye drops. Finally, Montgomery cites Drs. Cook and Doster's refusal to refer him to an eye specialist as a further ground for relief.
 
 
 8
 All of the alleged errors committed by Dr. Henry and the other defendants in this case involve alleged errors in medical judgment. The precedent is clear, however, that disputes about whether a doctor erred in his or her diagnosis of a patient's ailments are not cognizable under the eighth amendment. The Supreme Court in the seminal case of Estelle v. Gamble, supra, was explicit on this point:
 
 
 9
 [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.
 
 
 10
 429 U.S. at 106 (emphasis added). Although Montgomery alleges that all of the defendants acted "intentionally" or "deliberately," this characterization is wholly unsupported by the record. There is no evidence that Dr. Henry refused the eye surgery Montgomery requested because he intended to punish Montgomery, see Benson v. Cady, 761 F.2d 335, 339 (7th Cir.1985), or because he was recklessly indifferent to Montgomery's medical condition. Id. On the contrary, the evidence suggests the opposite.
 
 
 11
 Montgomery seems to have learned the buzz words and has attempted to fit the defendants' alleged conduct in this case into the mold of an eighth amendment claim. Without the factual basis to support his claims of deliberate indifference, however, summary judgment was properly entered below. The decision of the district court is, therefore,
 
 
 12
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Montgomery did file excerpts from medical journals that allegedly supported his opinion that Dr. Henry should have agreed to remove the metal object from his eye rather than the entire eye. These excerpts, however, seem to support Dr. Henry's position. For example, an excerpt from the American Journal of Ophthalmology reads as follows:
 Sympathetic ophthalmia is a rare, severe bilateral granulomatous uveitis. The cause is not known, but the disease may occur at any time from 1 week to many years after a penetrating injury through the ciliary body. The injured (exciting) eye becomes inflamed first and the fellow (sympathizing) eye second.... The best treatment of sympathetic ophthalmia is prevention by removing the damaged eye.